IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| HomeRun Products, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>Twin Towers Trading, Inc.,<br><br>                    Defendant. | Case No. 3:16-cv-436<br><br>**ORDER GRANTING REQUEST FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY AND DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE WITHOUT PREJUDICE** |

**INTRODUCTION AND SUMMARY OF DECISION**

Before the court is Defendant Twin Towers Trading, Inc.'s ("Twin Towers") Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer Venue.[1] On the record before the court, the court finds that HomeRun ought to be afforded an opportunity to conduct jurisdictional discovery before the court definitively decides whether personal jurisdiction can be established in this court. HomeRun's request for leave to conduct jurisdictional discovery is **GRANTED**. Twin Towers' motions to dismiss or transfer venue are **DENIED without prejudice**.

**FACTS**

This suit arises out of a business arrangement between HomeRun and Twin Towers. HomeRun is a Nevada Limited Liability Company whose principal office was located in Fargo, North Dakota.[2] Twin Towers is a Florida Corporation with its principal place of

---

[1] Doc. #6, Def.'s Mot. to Dismiss for Lack of Jurisdiction; Doc. #8, Def.'s Mot. to Transfer Venue.
[2] Doc. #1, Compl. ¶ 1.

1

business located in Florida.[3] Twin Towers is authorized to conduct business in North Dakota.[4] However, Twin Towers has never been a North Dakota citizen; has no office, employees, or inventory in North Dakota; and does not pay taxes in North Dakota.[5] Twin Towers did not make any sales in the state from at least August 2015 to December 2016.[6] The Complaint alleges no activities or events occurring in North Dakota.[7]

HomeRun and Twin Towers are engaged in the direct sales of products to consumers at host venues, to include grocery stores, retail stores, or big box stores.[8] HomeRun developed a proprietary method of direct sales that is preferred by host venues because it has led to increased sales.[9] In late 2014, Twin Towers became interested in selling HomeRun's product, the Miracle Whisk, and in having its sales teams trained in HomeRun's proprietary direct sales techniques.[10] On December 10, 2014, the parties entered into a "Vendor Services Agreement" ("the agreement") the terms of which provided that HomeRun would supply Miracle Whisks to Twin Towers for sale by Twin Towers' sales teams using HomeRun's proprietary techniques.[11] The agreement contained the following clause:

> **5.9   Consent to Jurisdiction.**  Each of the parties to this Agreement hereby specifically and irrevocably consents to the jurisdiction of the courts within the State of Florida with respect to any and all matters relating to this Agreement, and waives any objection it may have to the laying

---

[3] Doc. #1, Compl. ¶ 2; Doc. #7-1, Porges Aff. ¶ 3.
[4] Doc. #1, Compl. ¶ 2; Doc. #13-1, North Dakota Secretary of State Records.
[5] Doc. #7-1, Porges Aff. ¶¶ 4–10.
[6] Id. at ¶ 11.
[7] Doc #1, Compl.
[8] Doc. #1, Compl. ¶¶ 8, 13; Doc. #12, D. Patterson Aff. ¶ 2.
[9] Doc. #1, Compl. ¶ 12; Doc. #12, D. Patterson Aff. ¶ 3.
[10] Doc. #1, Compl. ¶ 14; Doc. #12, D. Patterson Aff. ¶ 5.
[11] Doc. #1, Compl. ¶ 15; Doc. #7-2, Vendor Services Agreement.

of venue in any such court. . . .[12]

In January 2015, Twin Towers suggested that the parties change their business relationship.[13] Drafts of agreements were exchanged, and by March the parties were close to an agreement, which included terms regarding compensation for training to be conducted by HomeRun in England.[14] HomeRun refused to conduct the training in England until the agreement was finalized.[15]

On March 11, 2015, HomeRun made what they purport were "final edits" to a contract entitled the "First Amended and Restated Vendor Services Agreement" ("the amended agreement"). A clean copy of the finally edited document was emailed to Twin Towers Vice President Eric Scholer and Twin Towers CEO Jeffrey Brandon.[16] Chris Dodigovic, a high-level manager at HomeRun, has been unable to produce the email because his Google account has been permanently deleted.[17] After sending the email, Dodigovic spoke to Scholer and Brandon, who both allegedly told Dodigovic that the amended agreement was acceptable and that they executed it.[18] On March 16, 2015, Scholer emailed Dodigovic, HomeRun CEO Darren Patterson, and HomeRun President Ashley Patterson, saying "Chris [Dodigovic], you and I reviewed and agreed to final changes last wk."[19]

HomeRun has provided a redlined copy of the amended agreement that it claims

---

[12] Doc. #7-2, Vendor Services Agreement ¶ 5.9.
[13] Doc. #12, D. Patterson Aff. ¶ 8.
[14] Id.
[15] Id.
[16] Id.; Doc. #13, Kaler Aff. ¶¶ 2–3; Doc. #14, Dodigovic Aff. ¶ 8.
[17] Doc. #14, Dodigovic Aff. ¶ 8.
[18] Id.
[19] Doc. #12-2, Email from Scholer to Dodigovic, D. Patterson, and A. Patterson (3/16/15).

3

Twin Towers agreed to and executed.[20] It includes the following clause changing the forum from Florida to North Dakota:

> **5.9   Consent to Jurisdiction.**  Each of the parties to this Agreement hereby and irrevocably consents to the jurisdiction of the courts within the State of North Dakota, with respect to any and all matters relating to this Agreement, and waives any objection it may have to the laying of venue in any such court. . . .[21]

Twin Towers denies that it ever agreed to or executed the amended agreement, especially with regard to its North Dakota forum selection clause.[22]  Instead, Twin Towers claims that it only conveyed agreement to some baseline changes or additions regarding product distribution and employee training.[23]  Twin Towers further denies that any negotiations concerning the clause ever took place or that it received any consideration for the change of forum.[24]  Twin Towers asserts it never would have agreed to the clause because it does business primarily out of Florida and customarily requires Florida forum selection clauses in its contracts.[25]

To establish that it never assented to the amended agreement, Twin Towers has provided additional email correspondence.[26]  In the March 16, 2015, email, Scholer also wrote "I'm still waiting for an email from you [Dodigovic] on the wording you were suggesting" and asked that any suggested wording to be sent to Twin Towers' attorney Mike Sessine because Twin Towers required its attorneys to review and revise any written

---

[20] Doc. #12, D. Patterson Aff. ¶ 9; Doc. #12-1, First Amended and Restated Vendor Services Agreement.
[21] Doc. #12-1, First Amended and Restated Vendor Services Agreement ¶ 5.9.
[22] Doc. #18-2, Scholer Aff. ¶¶ 11, 13; Doc. #18-3 Brandon Aff. ¶¶ 10, 12.
[23] Doc. #18-2, Scholer Aff. ¶ 7; Doc. #18-3, Brandon Aff. ¶ 6.
[24] Doc. #18-2, Scholer Aff. ¶¶ 12, 14; Doc. #18-3. Brandon Aff. ¶ 11.
[25] Doc. #18-2, Scholer Aff. ¶ 8; Doc. #18-3, Brandon Aff. ¶ 8.
[26] Doc. #18-2, Scholer Aff. ¶ 10.

4

agreements.[27] The following day, Dodigovic replied, "Yes our lawyer has the agreement and is amending it for your review. . . . I will get it to you asap."[28] On April 1, 2015, Sessine emailed Scholer to ask "Did you ever hear back from the HomeRun folks?" to which Scholer replied, "Still waiting."[29]

Confident that the parties had come to an agreement, Dodigovic traveled to England on March 14, 2015, to train Twin Towers employees.[30] Dodigovic remained in England until April 5 or 6, 2015.[31] After his return, the business relationship between the parties deteriorated due to a dispute over pricing of the Miracle Whisk.[32] HomeRun alleges Twin Towers now sells a competing product to the Miracle Whisk while using HomeRun's proprietary direct sales techniques without compensating HomeRun.[33] HomeRun brought this suit alleging breach of contract, misappropriation of trade secrets, fraudulent inducement, deceit, and interference with prospective advantage.[34]

Twin Towers now moves for dismissal of this suit for lack of personal jurisdiction or, alternatively, for transfer of venue to the Middle District of Florida.[35]

## DISCUSSION

### I.   Motion to Dismiss for Lack of Personal Jurisdiction

---

[27] Doc. #18-2, Scholer Aff. ¶ 7; Doc. #18-3, Brandon Aff. ¶ 7; Doc. #18-4, Email from Scholer to Dodigovic, D. Patterson, and A. Patterson (3/16/15).
[28] Doc. #18-4, Email from Dodigovic to Scholer (3/17/15).
[29] Doc. #18-4, Email from Sessine to Scholer (4/1/15); Doc. #18-4, Email from Scholer to Sessine (4/1/15).
[30] Doc. #14, Dodigovic Aff. ¶ 9.
[31] Id. at ¶ 11.
[32] Doc. #1, Compl. ¶¶ 33–38; Doc. #12, D. Patterson Aff. ¶ 11; Doc. #14, Dodigovic Aff. ¶ 11.
[33] Doc. #1, Compl. ¶¶ 40–41; Doc. #12, D. Patterson Aff. ¶ 11.
[34] Doc. #1, Compl. ¶¶ 42–102.
[35] Doc. #6, Def.'s Mot. to Dismiss for Lack of Jurisdiction; Doc. #8, Def.'s Mot. to Transfer Venue.

HomeRun bears the burden of establishing that personal jurisdiction over Twin Towers exists in the District of North Dakota.[36] To establish this, HomeRun "must state sufficient facts in the complaint to support a reasonable inference that [the] defendant can be subjected to jurisdiction within the state. Once jurisdiction ha[s] been controverted or denied, [the plaintiff has] the burden of proving such facts."[37] Such proof "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions in opposition thereto."[38]

A court performs a two-step analysis for personal jurisdiction: (1) The court must determine whether the state's long-arm statute would allow jurisdiction under the facts of the case, and (2) the court must determine whether the exercise of jurisdiction comports with constitutional due process restrictions.[39] Because North Dakota's long-arm statute grants jurisdiction to the fullest extent permitted by the Constitution,[40] the court's analysis will focus solely on whether the exercise of personal jurisdiction would comport with due process.[41]

In their briefs, the parties assert two separate methods of establishing that the

---

[36] See Yanez v. GRACO, Inc., No. 3:10-CV-111, 2013 WL 11326537, at *3 (D.N.D. Aug. 16, 2013) (citing Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003).

[37] Block Indus. v. DHJ Indus., Inc., 495 F.2d 256, 259 (8th Cir. 1974) (internal citation omitted).

[38] Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting Block Indus., 495 F.2d at 260). See also Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that the mere allegations of the complaint, when contradicted by affidavits, are enough to confer personal jurisdiction of a nonresident defendant. In such a case, facts, not mere allegations, must be the touchstone.").

[39] Burckhard v. BNSF Ry. Co., No. 4:13-CV-038, 2013 WL 11975133, at *2 (D.N.D. Oct. 24, 2013) (citing Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706–07 (8th Cir. 2003)).

[40] Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223, 230 (N.D. 2002) ("N.D.R.Civ.P. 4(b)(2) authorizes North Dakota courts to exercise personal jurisdiction over nonresident defendants to the fullest extent permitted by due process.").

[41] Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

exercise of personal jurisdiction comports with due process: "minimum contacts" or consent. "Due process requires 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[42] Under a minimum contacts analysis, a non-resident defendant's contacts with a forum state must be sufficient to cause the defendant to "reasonably anticipate being haled into court there."[43] Second, regardless of the existence of minimum contacts, due process is also satisfied when a defendant consents to personal jurisdiction by entering into a contract with a valid forum selection clause.[44]

### A.   Minimum Contacts

The United States Supreme Court has recognized two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction.[45] General jurisdiction exists when the defendant has "continuous and systematic contacts" with the forum state, even if the injuries at issue in the case are unrelated to such contacts.[46] Specific jurisdiction, on the other hand, exists when "the injury giving rise to the lawsuit occurred within or had some connection to the forum state."[47] Both categories of minimum contacts require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[48]

---

[42] Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92 (1980)).

[43] Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003) (citing World-Wide Volkswagen, 444 U.S. at 297).

[44] Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 452, 472 n.14 (1985); M/S Bremen v. Zapala Off-Shore Co., 407 U.S. 1, 15 (1972)).

[45] Dever, 380 F.3d at 1073.

[46] Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984)).

[47] Id. (citing Helicopteros, 466 U.S. at 414).

[48] Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The Eighth Circuit has adopted a five-factor test for determining whether sufficient minimum contacts exist:

(1) the nature and quality of [a defendant's] contacts with the forum state;

(2) the quantity of such contacts;

(3) the relation of the cause of action to the contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) convenience of the parties.[49]

The first three factors are considered to be primary and the remaining two factors to be secondary.[50] With regard to the third factor, "the fact that the cause of action is not linked to the defendant's contacts with the forum state does not necessarily preclude a finding of personal jurisdiction."[51]

Because HomeRun has not alleged any facts tying the injuries in this suit to activities or events occurring in North Dakota, the court's analysis will deal only with general jurisdiction. HomeRun argues that "[p]ersonal jurisdiction over Twin Towers is appropriate based upon contacts" and then relies upon an "obvious inference" in a Twin Towers Affidavit that "Twin Towers was in North Dakota and was selling products to directly to residents of North Dakota prior to August of 2015."[52] Under the existing record, it appears the only other contact between Twin Towers and North Dakota is that Twin Towers is authorized to transact business in North Dakota.

---

[49] Burlington Indus., 97 F.3d at 1102–03 (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)).
[50] Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010).
[51] Dever, 380 F.3d at 1074 (citing Helicopteros, 466 U.S. at 414–15).
[52] Doc. #11, Pl.'s Resp. Br. 6–7.

If these turn out to be the only contacts with North Dakota, neither of these facts would likely be sufficient to show continuous and systematic contacts. Even if HomeRun's inference is correct and Twin Towers had contacts with North Dakota prior to August 2015, the record is entirely devoid of the nature, quantity, or quality of those contacts. Without some information on these matters, HomeRun cannot show that Twin Towers had continuous and systematic contacts with the forum state.

The second asserted fact may also be insufficient. Mere registration to transact business in North Dakota does not render Twin Towers subject to general jurisdiction in the state. In Daimler AG v. Bauman, the Supreme Court of the United States clarified that in determining if general jurisdiction exists, the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'"[53]

Twin Towers' contacts with North Dakota appear on this record to be slim and do not seem to render it "at home" in North Dakota. Twin Towers is authorized to do business in North Dakota, and it is possible to draw a reasonable inference that it made sales in the state prior to August 2015. These seem to be Twin Towers' only connections to North Dakota. Twin Towers is a Florida corporation with its principal place of business also in Florida. It has never been a citizen of North Dakota; has no office, employees, or inventory in the state; and does not pay any taxes in the state. On the facts presented to the court, Twin Towers does not appear to be at home in North Dakota and would likely not be

---

[53] Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

subjected to general jurisdiction in the state of North Dakota.

### B. Consent to Jurisdiction

Even if Twin Towers is not at home in North Dakota, personal jurisdiction could be properly exercised in the District of North Dakota if Twin Towers has consented by entering into a contract with a valid forum selection clause. HomeRun argues that Twin Towers consented to jurisdiction when it entered into the amended agreement, which contained a forum selection clause for jurisdiction in North Dakota. Twin Towers disputes this assertion, maintaining that the only contract with HomeRun that it ever entered into was the agreement with a Florida forum selection clause.

If parties have truly entered into a contract, a forum selection clause contained therein is "enforceable unless it is invalid or enforcement would be unreasonable and unjust."[54] The law favors enforcement of such clauses because enforcement promotes the parties' bargained for exchange, protects the parties' legitimate expectations, and furthers the interests of the justice system.[55] Because of these important interests behind enforcement, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[56]

Courts around the country, however, "have been hesitant to give effect to contractual provisions designating choice of law and forum selection when the parties have not clearly consented to such terms."[57] In Siragusa v. Arnold, the parties agreed that they had signed

---

[54] Dominium Austin, 248 F.3d at 726 (citing M/S Bremen, 407 U.S. at 15).

[55] Atl. Marine Constr. Co. v. United States Dist. Court, 134 S. Ct. 568, 581 (2013) (citing Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

[56] Id. (alteration in original) (quoting Stewart, 487 U.S. at 33 (Kennedy, J., concurring)).

[57] Siragusa v. Arnold, No. 3:12-CV-04497-M, 2013 WL 5462286, at *4 (N.D. Tex. Sept. 16, 2013) (citing United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1223 (10th Cir. 2000); Rahco Intern., Inc. v. Laird Elec., Inc., 502 F.Supp.2d 1118, 1123 (E.D. Wash. 2006)).

a contract, but the plaintiff claimed that he never received a copy of it and the defendants only presented an unsigned copy to the court.[58] The unsigned contract contained a forum selection/choice of law clause, but the plaintiff stated that he did not recall seeing such a clause in the version of the contract that he signed and he provided evidence showing that the contract underwent extensive changes during the drafting process.[59] In addition, there was no evidence that the clause was specifically discussed at any point.[60] The court concluded that it could not "determine definitively if the parties agreed to the forum selection/choice of law provisions" and thus declined to enforce the clause.[61]

The court cannot determine definitively if HomeRun and Twin Towers agreed to the North Dakota forum selection clause in the amended agreement. HomeRun has presented some evidence that suggests that the contract, including the forum selection clause, was actually executed by Twin Towers, including:

1. On or around March 11, 2015, HomeRun "made the final edits" to the contract, including the North Dakota forum selection clause.[62]

2. Dodigovic claims that he forwarded the contract that day or the following day to Twin Towers for review and comment.

3. Dodigovic also claims that he spoke to Scholer and Brandon, who said that the contract was acceptable and that they executed the contract.

4. Finally, HomeRun relies on a March 16, 2015, email from Scholer to Dodigovic,

---

[58] Id.
[59] Id. at *5.
[60] Id.
[61] Id.
[62] Doc. #12, Patterson Aff. ¶ 9; Doc. #13, Kaler Aff. ¶¶ 2–3.

Darren Patterson, and Ashley Patterson in which Scholer wrote "you and I reviewed and agreed to final changes last wk."[63]

While this evidence presented by HomeRun points in favor of the contract having been executed, the remainder of Scholer's email, Dodigovic's response to it, and the email exchange between Scholer and Sessine cast doubt that Twin Towers ever agreed to and executed the contract with the North Dakota forum selection clause. In the second paragraph of his email on March 16, 2015, Scholer indicates that the final version of the contract was still forthcoming. Scholer was "still waiting for an email from [Dodigovic] on the wording [Dodigovic was] suggesting."[64] Scholer asked Dodigovic to send the proposed wording to Sessine before it could be inserted because "Twin Towers required its attorneys to review, revise and provide guidance to Twin Towers on the execution of any written agreement."[65] Dodigovic's response on March 17, 2015, when he told Scholer that HomeRun's "lawyer has the agreement and is amending it for your review" and promised that he "will get it to you asap" suggests that perhaps no final agreement had been reached.[66]

Despite Dodigovic's assurances, it appears that as of April 1, 2015, near the end of the training trip to England, the amended agreement still had not been sent to Scholer, Sessine, or anyone representing Twin Towers. Sessine asked Scholer in an email, "Did you ever hear back from the HomeRun folks?" to which Scholer replied, "Still waiting."[67] The

---

[63] Doc. #12-2, Email from Scholer to Dodigovic, D. Patterson, and A. Patterson (3/16/15).
[64] Id.
[65] Doc. #18-2, Scholer Aff. ¶¶ 7, 9.
[66] Doc. #18-4, Email from Dodigovic to Scholer (3/17/15).
[67] Doc. #18-4, Email from Sessine to Scholer (4/1/15); Doc. #18-4, Email from Scholer to Sessine (4/1/15).

fact that Twin Towers was "still waiting" for an amended version of the contract on both March 16 and April 1, 2015, leads to the possible conclusion that Twin Towers had not agreed to the entire final contract, let alone executed it, at the time that HomeRun claims that Twin Towers did so.

On the existing record, it is not clear that the "final changes" that Twin Towers reviewed and approved in the week prior to March 16, 2015, included the North Dakota forum selection clause. While HomeRun claims that it emailed a clean copy of the amended agreement to Scholer and Brandon, HomeRun has not produced a copy of the email because Dodigovic's Google account has been permanently deleted. Twin Towers, on the other hand, claims that it only conveyed agreement to some baseline terms including product distribution terms and employee training terms, that it does business primarily out of Florida and thus always requires Florida forum selection clauses, that it never engaged in any negotiations to amend the Florida forum selection clause, and that it received no consideration for the alleged change to the clause.

In light of the issues raised by Twin Towers, HomeRun has requested that it be given an opportunity to conduct "limited jurisdictional discovery to demonstrate Twin Towers' receipt, acceptance and manifestation of assent" to the contract.[68] As it is unclear whether Twin Towers assented to the amended agreement with its North Dakota forum selection clause, HomeRun's request is **GRANTED**.

## CONCLUSION

On the record before the court, there are unresolved issues about whether personal

---

[68] Doc. #11, Pl.'s Resp. Br. 11.

13

jurisdiction can be established over Twin Towers.  HomeRun's request for leave to conduct jurisdictional discovery is **GRANTED**.  Twin Towers' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer Venue is **DENIED without prejudice**.  Upon the completion of jurisdictional discovery, Twin Towers can refile such motions.  HomeRun's Motion for Oral Argument is **DENIED without prejudice**.[69]

**IT IS SO ORDERED.**

Dated this 27th day of September, 2017.

                                                                                    */s/   Ralph R. Erickson*
                                                                                Ralph R. Erickson, District Judge
                                                                                United States District Court

---

[69] Doc. #19, Pl.'s Mot. for Oral Arg.