UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HOMERUN PRODUCTS, LLC,<br><br>                         Plaintiff,<br>v.<br><br>TWIN TOWERS TRADING, INC.,<br><br>                         Defendant. | Case No.: 2:18-cv-00794-JCM-GWF<br><br>**ORDER**<br><br>**Re: Motion to Compel (ECF No. 72)** |

This matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 72), filed on January 31, 2019. Defendant filed its Opposition (ECF No. 78) on February 14, 2019, and Plaintiff filed its Reply (ECF No. 83) on February 21, 2019. The Court conducted a hearing in this matter on March 4, 2019.

## **BACKGROUND**

Plaintiff HomeRun Products, LLC ("HomeRun") alleges that it is an importer and distributor of products, as well as the manufacturer, importer and distributor of a kitchen utensil known as the "Miracle Whisk." It sells the Miracle Whisk directly to consumers through traveling sales teams. HomeRun contracts with supermarkets, retailers and tradeshows to set up booths operated by it sales teams. The sales teams perform live demonstrations of the products to shoppers, and HomeRun pays a percentage of the product sales to the stores that host its sales teams. HomeRun claims that it developed a propriety method of marketing and demonstrating its products that does not require use of the hosting stores' public address systems which is disfavored by the stores. *Complaint* (ECF No.1), at ¶¶ 7-12.

1

Defendant Twin Towers Trading, Inc. ("Twin Towers") also engages in the direct sales of products at supermarkets and tradeshows. On December 10, 2014, HomeRun and Twin Towers entered into a Vendor Services Agreement pursuant to which HomeRun appointed Twin Towers as its exclusive vendor representative for the demonstration and sale of products within the Vons and Kmart retail stores and others as mutually agreed. Under this agreement, HomeRun was responsible for conducting the sales events and providing the product inventory for sale at those events. Twin Towers was obligated to manage the relationship between Twin Towers and the stores, research and schedule space availability, perform program and sales analyses, provide HomeRun with reports concerning the sale of products, and be the supplier of record for sales of products within the territory. *See Affidavit of Brian Wacker* (ECF No. 79), *Exhibit E* (copy of December 10, 2014 Vender Services Agreement).

HomeRun alleges that following a successful trial period under the Vendor Services Agreement, the parties negotiated a second agreement, a final draft of which was prepared and approved by both parties in or around May 2015. *Complaint* (ECF No. 1), at ¶ 16. (HomeRun acknowledges that it never received a signed second agreement from Twin Towers.) Under the second agreement, Twin Towers was made the exclusive vendor for the demonstration and sale of HomeRun's products, including the Miracle Whisk, within selected stores in Twin Tower's territories. HomeRun agreed to provide the Miracle Whisk product to Twin Towers at wholesale cost from which HomeRun expected to receive a profit of $1.10 per whisk. The actual per-unit cost of the whisks depended on the number of units ordered, with "container pricing" creating the lowest per-unit cost. HomeRun would also receive a percentage of sales made by Twin Towers and Twin Towers agreed not to purchase similar products from other suppliers. *Id.* at ¶¶ 17-25. HomeRun would also receive a three percent gross revenue share in perpetuity for any training provided to Twin Towers on any products sold in any retailer worldwide, excluding Sam's Club and Costco. *Id.* at ¶ 26.

HomeRun sent two representatives to the United Kingdom to instruct Twin Towers' sales team in HomeRun's proprietary sales techniques. While the representatives were in the United

2

Kingdom, a dispute arose regarding the pricing of the Miracle Whisk. HomeRun had shipped several hundred whisk products to the United Kingdom for demonstration purposes which were quickly sold. Twin Towers requested more product from HomeRun, but objected to the price that HomeRun charged. Twin Towers demanded container pricing which HomeRun was unable and unwilling to provide at that time. After HomeRun's representatives returned to the United States, they were informed that Twin Towers had not approved the contract. Twin Towers thereafter refused to honor the contract, and began selling a whisk product similar in appearance and function to the Miracle Whisk. Twin Towers also allegedly used HomeRun's proprietary direct sales techniques to sell its whisk product. *Id.* at ¶¶ 31-41. HomeRun alleges claims for breach of contract, misappropriation of trade secrets, fraudulent inducement, deceit, and interference with prospective advantage. *Id.* at ¶¶ 42-102.

Twin Towers denies that the parties entered into a second agreement. It does not dispute that HomeRun sent representatives to the United Kingdom to instruct its personnel, but asserts that the instruction they provided was useless. Twin Towers also argues that HomeRun has failed to identify its allegedly propriety sales techniques in response to Twin Towers' discovery requests. It also argue that the HomeRun's "sales pitch" does not constitute a trade secret because the sales pitch was presented to potential customers and other third persons.

HomeRun states that Twin Towers Trading, Ltd. was Twin Tower's United Kingdom affiliate or subsidiary. Plaintiff's attorney Asa K. Burck states that during the investigation of this case, he viewed a YouTube video in which a person believed to be Callum Regan, an employee of Twin Towers Trading, Ltd., demonstrated the "Mr. Whipster" whisk product that Twin Towers began selling after it repudiated the contract with HomeRun. When Mr. Burk later attempted to view the same video, it was no longer available. Mr. Burck also visited the Twin Towers Trading, Ltd. website which had a page dedicated to the sale of the Mr. Whipster whisk. He noticed a similarity between the language used to market the Mr. Whipster product and that used to market HomeRun's Miracle Whisk. When he later visited the website, the page for Mr. Whipster was no longer available. As of January 16, 2019, the entire website for Twin Towers

Trading, Ltd., was no longer available. *Affidavit of Asa K. Burck* (ECF No. 74), at ¶¶ 3-8. HomeRun asserts that Michael Regan and Callum Regan, whom it believes were employees of Twin Towers Trading, Ltd. were present during HomeRun's training sessions in the United Kingdom.

HomeRun seeks to compel further responses to the following interrogatories:

**Interrogatory No. 1:** Identify each and every person having knowledge or information relating to the subject matter of this lawsuit. As to each person state:

a. name;
b. address;
c. occupation;
d. current employment;
e. rank or status with current employer;
f. identify the information this person has with respect to this matter.

**Answer:** TTT objects to Interrogatory #1 as overbroad and unduly burdensome. TTT cannot reasonably be expected to know and provide the requested information of such persons when the allegations of HomeRun's Complaints are HomeRun's allegations, not TTT's allegations, and when TTT denies the truthfulness of said allegations.

Subject to and without waiving said objections, TTT refers to its Rule 26 Disclosures in this matter and further identifies Jeff Brandon, Eric Scholer, Darren Patterson, Ashley Patterson and Chris Dodigovic. TTT's investigation into additional such individuals continues and it will supplement this answer upon discovery of the same.

**Interrogatory No. 4:** Identify all sales of manual pump whisks, whether Mr. Whipster or otherwise, sold by Twin Towers Trading, Inc., or its affiliates, subsidiaries, parent companies, agents, representatives, or related entities between January 1, 2015 and the present date. Include in your response the stores and territories in which these products were sold, the prices at which the whisks were sold, and the prices at which the whisks were purchased by Twin Towers.

**Answer:** TTT objects to Interrogatory #4 to the extent HomeRun seeks discovery of information related to products which are not the Mr. Whipster whisk (as mis-alleged in its Complaint as the Mr. Whisker wisk) because such information is wholly irrelevant to its causes of action and TTT's defenses. Interrogatory #4 is disproportionately overbroad and unduly burdensome to the needs of the case and the burden and expense of this proposed discovery far

outweighs any contrived benefit. Further, such information will not be admissible or reasonably likely to lead to the discovery of admissible evidence.

TTT further objects to Interrogatory #4 to the extent it specifically requests store, territory, pricing and purchasing information, all of which is confidential, proprietary information which TTT will not disclose to HomeRun, its competitor. TTT derives substantial economic value form this information being is own and not being known to or readily ascertainable by its competitors (including HomeRun) by proper means or by the public and TTT expends substantial effort and resources to maintain the secrecy of this information. If HomeRun does not withdraw this component of Interrogatory #4, TTT will seek an order from the Court protecting it from having to disclose this information to HomeRun.

Subject to and without waiving said objection, TTT states that it began selling the Mr. Whipstir product in November 2015. TTT further refers to documents produced herewith.

**Interrogatory No. 6:** Identify the manufacturers, distributors, suppliers, brokers, and wholesalers, who have sold Mr. Whipstir or other manual pump whisks, to Twin Towers Trading, Inc. and its affiliates, subsidiaries, parent companies, agents, representatives or related entities, and the amount and price of whisks purchased from each.

**ANSWER**: TTT objects to Interrogatory #6 as the information sought is confidential, proprietary information which TTT will not disclose to HomeRun its competitor. TTT derives substantial economic value from this information being its own and not being known to or readily ascertainable by its competitors (including HomeRun) by proper means or by the public and TTT expends substantial effort and resources to maintain the secrecy of this information. If HomeRun does not withdraw Interrogatory #6, TTT will seek an order from the Court protecting it from having to disclose this information to HomeRun.

TTT further objects to Interrogatory #6 to the extent HomeRun seeks discovery of information related to manufacturers, distributors, suppliers, brokers and wholesalers because such information is wholly irrelevant to its causes of action and TTT's defenses. Interrogatory #6 is disproportionately overbroad and unduly burdensome to the needs of the case and the burden and expense of this proposed discovery far outweighs any contrived benefit. Further, such information will not be admissible or reasonably likely to lead to the discovery of admissible evidence.

**Interrogatory No. 7:** Describe Twin Towers Trading, lnc.'s sales methods for manual pump whisks, whether the Mr. Whipstir or otherwise, from 2013 through present.

5

**ANSWER:** TTT objects to Interrogatory #7 as vague insofar as it does not define the term "sales methods." TTT further objects to Interrogatory #7 as unduly burdensome in time and scope back to 2013 when the allegations in HomeRun's Complaint do not begin until late 2014 and to the extent it seeks information relating to products which are not the Mr. Whipstir product.

Subject to and without waiving said objections, to the extent HomeRun seeks to discover how TTT has sold the Mr. Whipstir product, TTT states that it began selling the Mr. Whipstir product in or about November, 2015. TTT has utilized in-store demonstration sales techniques which it has utilized for many years pre-dating any relationship between HomeRun and TTT. TTT formulated and authored its own scripts.

**Interrogatory No. 10:** Identify all entities related to, owned by, or affiliated with Twin Towers Trading, Inc. that have sold manual pump whisks, whether Mr. Whipstir or other, and include their relationship to Twin Towers Trading, Inc.

**ANSWER:** TTT objects to Interrogatory #10 as overbroad to the extent HomeRun seeks discovery of information related to products which are not the Mr. Whipstir whisk alleged in its Complaint because such information is wholly irrelevant to its causes of action and TTT's defenses. Interrogatory #10 is disproportionately overbroad and unduly burdensome to the needs of the case and the burden and expense of this proposed discovery far outweighs any contrived benefit. Further, such information will not be admissible or reasonably likely to lead to the discovery of admissible evidence.

Further, to the extent HomeRun seeks information related to TTT's business with regard to any product other than the Mr. Whipstir whisk, which is the only product remotely at issue in this case, TTT objects to Interrogatory #10 as the information sought is confidential, proprietary information which TTT will not disclose to HomeRun, its competitor. TTT derives substantial economic value from this information being its own and not being known to or readily ascertainable by its competitors (including HomeRun) by proper means or by the public and TTT expends substantial effort and resources to maintain the secrecy of this information. If HomeRun does not withdraw Interrogatory #10, TTT will seek an order from the Court protecting it from having to disclose this information to HomeRun.

Subject to and without waiving said objections, TTT states it is the only entity involved in the sale of the Mr. Whipstir product. TTT further states that the Mr. Whipstir product is the only manual pump whisk which TTT has sold.

**Interrogatory No. 11:** Identify all scripts and sales pitches (including all

recordings of these things) that Twin Towers Trading, Inc. and its affiliates, subsidiaries, parent companies, agents, representatives and related entities, used in the direct sale of any whisks from January 1, 2014 through present. This includes identification of the dates and geographical location of usage.

**ANSWER**: TTT objects to Interrogatory #11 as its scripts and sales pitches are confidential business information which TTT will not disclose to HomeRun, its competitor, and is entitled to maintain the confidentiality of this information. Further, HRP has no right to information regarding non-HRP products sold by TTT.

TTT further objects to Interrogatory #11 to the extent it seeks scripts and sales pitches related to products which are not the Miracle Whisk product which have nothing to do with HomeRun's allegations. None of this information is admissible and the request to produce it is disproportionately overbroad and unduly burdensome to the needs of the case and the burden and expense of this request far outweighs any benefit. If HomeRun does not withdraw Interrogatory #11, TTT will seek an Order from the Court protecting it from having to disclose this information to HomeRun.

**Interrogatory No. 12:** Identify all scripts and sales pitches (including all recordings of these things) that Twin Towers Trading, Inc. and its affiliates, subsidiaries, parent companies, agents, representatives and related entities, used in the direct sale of all other products from January 1, 2014 through present. This includes identification of the dates and geographical location of usage.

**ANSWER**: TTT objects to Interrogatory #12 on the same basis set forth in response to Interrogatory #11 as its scripts and sales pitches are confidential business information which TTT will not disclose to HomeRun, its competitor. If HomeRun does not withdraw Interrogatory #11, TTT will seek an Order from the Court protecting it from having to disclose this information to HomeRun.

**Interrogatory No. 13:** Identify the dissemination of any part of the training materials and information provided or produced by HRP in April-May 2015. This includes any partial or complete reproduction of the materials or information provided or learned from HRP, to anyone; identify the means of dissemination, when, how and to whom.

**ANSWER**: TTT is unaware of any "training materials" or "information" provided by HomeRun in April or May, 2015. TTT's investigation continues and it will supplement this answer if any responsive documents are identified.

7

1       HomeRun also requests that Twin Towers be ordered to produce "associated documents requested in [its] Requests for Production," but does not specifically identify those requests in its motion. *See Motion to Compel* (ECF No. 72), at 2, 24.

      HomeRun argues that Twin Towers should be required to respond to Interrogatory No. 1 by providing the requested information for Michael Regan and Callum Regan. Twin Towers states that these two individuals are not currently employed by it or its affiliates. It has apparently made no effort to determine whether it has responsive information regarding Michael Regan and Callum Regan. HomeRun argues that Twin Towers should be required to answer the other interrogatories which are relevant and proportional to its claims for breach of contract and misappropriation of trade secrets, and to the determination of damages. Twin Towers' opposition to the motion to compel is primarily based on the assertion that HomeRun's claims have no merit. Specifically, Twin Towers asserts that it did not enter into a second contract with HomeRun in May 2015.

## DISCUSSION

      Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable."

      As a general matter, the court does not grant or deny discovery based on a prediction of whether the parties' claims or defenses will succeed. Even where a defendant has filed a potentially dispositive motion, the court will not stay discovery unless it is convinced that the plaintiff cannot state a claim for relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D.Nev. 2013). Twin Towers has not filed a potentially dispositive motion. Nor has it demonstrated that such a motion, if filed, would be granted. The strength or weakness of a

particular claim or defense, however, may have some bearing on the determination of whether the proposed discovery is proportional. The court should prohibit or limit overly burdensome discovery relating to doubtful or tangential claims or defenses.

HomeRun's motion to compel is directed at obtaining information and documents relating to Twin Towers' or its affiliates' sales of the Miracle Whisk product on which HomeRun was entitled to commissions, and the sales of other whisk products after Twin Towers allegedly breached the contract and misappropriated HomeRun's proprietary sales techniques. Interrogatory No. 1 broadly requests the identity of each and every person having knowledge or information relating to the subject matter of this lawsuit. The motion to compel, however, only seeks information for Michael Regan and Callum Regan, who were employees of Twin Towers Trading, Ltd. and were present during the training that HomeRun provided in May 2015. This information is clearly relevant and proportional to the needs of the case. Plaintiff's motion to compel a further response to Interrogatory No. 1 is granted as to these two individuals. Interrogatory Nos. 4, 6, 7, 10, 11 and 12 seek information relating to Twin Towers' sales of the Miracle Whisk product, and the purchase and sale of other manual pump whisk products by Twin Towers or its related and affiliated entities. The information requested in these interrogatories is relevant to HomeRun's claims and to the damages it allegedly sustained. These interrogatories are also proportional to the needs of the case.

Interrogatory No. 13 askes Twin Towers to "[i]dentify the dissemination of any part of the training materials and information provided or produced by HRP in April-May 2015." HomeRun states this interrogatory is aimed at determining whether Twin Towers or others have used its propriety sales techniques to sell other types of products. Twin Towers stated in response to Interrogatory No. 13 that it "is unaware of any 'training materials' or 'information' provided by HomeRun in April or May, 2015." Twin Towers also argues that HomeRun has failed to identify the trade secrets that Twin Towers allegedly misappropriated.

HomeRun should identify with reasonable particularity the training materials and other information that it refers to in Interrogatory No. 13. Although Twin Towers may, in fact, know what training materials or information are referred to in the interrogatory, it will be difficult for the Court to determine whether Defendant has sufficiently answered the interrogatory unless the requested materials and information are clearly identified. HomeRun can pursue a further response to Interrogatory 13 by providing Twin Towers with a description of the training materials or other information provided during the training. HomeRun's motion to compel a further answer to Interrogatory No. 13 is therefore denied without prejudice.

Twin Towers also objected to Interrogatory Nos. 4, 10, 11 and 12 on the ground that they seek its trade secrets or confidential, proprietary information. Twin Towers asserts that it derives substantial economic value from this information not being known to or readily ascertainable by its competitors or the public through proper means; and that it has expended substantial effort and resources to maintain the secrecy of this information. It also threatened to seek a protective order if HomeRun did not withdraw it requests for disclosure of Twin Towers' trade secrets. HomeRun argues that Twin Towers did not sell whisk products until it misappropriated HomeRun's propriety sales techniques and used them to sell a competing and inferior product. HomeRun argues that it needs the requested information to prove that Twin Towers breached the contract and/or misappropriated its trade secrets and to establish the damages it has sustained.

There is no absolute privilege for trade secrets and similar confidential or proprietary information. *DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 459 (C.D.Cal. 2002) (citing *Federal Open Market Committee v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813 (1979); *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 330 (9th Cir. 1961); and *Centurion Industries, Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981)). The court, quoting *In re Remington Arms Company, Inc.*, 952, 1029, 1032 (8th Cir. 1991), further stated:

> [T]he party opposing discovery must show that the information is a 'trade secret or other confidential research, development, or commercial information' under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. [¶] If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information. If the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted, and the trade secrets are not to be revealed.

209 F.R.D. at 459. *See also Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 684-86 (N.D.Cal. 2006); *Nutratech, Inc. v. Syntech (SSPF) International, Inc.*, 242 F.R.D. 552, 554-55 (C.D.Cal. 2007); *Ch2E Nevada LLC v. Latif Mahjoob*, 2016 WL 7106391, at *1 (D.Nev. Dec. 5, 2016); and *Scientific Games Corp. v. AGS LLC*, 2017 WL 3013251, at *3-4 (D.Nev. Jul. 13, 2017).

Where trade secrets are involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair the prosecution or defense of the claims. *Nutratech*, 242 F.R.D. at 555 (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). The court may order that the trade secret or confidential information not be revealed or be revealed only in a designated way. *Id.* (citing Fed.R.Civ.P. 26(c)(1)(G)).[1] This may include an order that the information be provided to the opposing party's outside counsel, but not to the opposing party itself. *Id.* (citing *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D. Del. 1988)). *See also Lindsey v. Elsevier Inc.*, 2016 WL 8731471, at *2 (S.D.Cal. Aug. 19, 2016); and *Russo v. Lopez*, 2011 WL 13250478, at *3-4 (D.Nev. Dec. 12, 2011).

The determination of whether corporate information, such as customer and pricing information, is a trade secret is a question of fact. *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 358 (2000) (citing *Woodward Insur., Inc. v. White*, 437 N.E.2d 59, 67 (Ind. 1982)). Factors to be considered include (1) the extent to which the information is known outside of the business

---

[1] Formerly Rule 26(c)(7).

11

and the ease or difficulty with which the acquired information could be properly acquired by others; (2) whether the information was confidential or secret; (3) the extent and manner in which the person guarded the secrecy of the information; and (4) the alleged misappropriator's knowledge of customers' buying habits and other customer data and whether this information is known by competitors. *Id.* at 358-59.

*Frantz* involved the issue of whether the plaintiff had presented sufficient evidence at trial to support his claim for misappropriation of trade secrets. Here, the issue involves an objection to interrogatories on the grounds that they seek privileged trade secrets. Arguably, Defendant's burden of showing that the requested information qualifies as a trade secret is lower than that of a plaintiff who is attempting to establish liability for misappropriation. Twin Towers, however, has done nothing more than cite the elements of the statutory definition of trade secret to support its assertion that the requested information is a trade secret. *See* NRS 600A.030.6. It has not satisfied the first requirement of showing that the information is entitled to protection as a trade secret. HomeRun has met its burden of showing that the requested information is relevant to its claims and that it needs the information to prove liability and damages. Twin Towers' objections based on the trade secret privilege are therefore overruled.

HomeRun requests an award of sanctions against Twin Towers as a result of its failure to respond to the discovery requests. *Motion to Compel* (ECF No. 73) at 25. Fed.R.Civ.P. 37(a)(5)(C) provides that if a motion to compel is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. HomeRun's motion to compel is granted except as to Interrogatory No. 13 and the requests for production of documents not identified in the motion. The Court is not convinced that Twin Towers cannot answer Interrogatory 13 without additional information. For the reasons stated above, however, Plaintiff is required to describe the training materials and other information referenced in Interrogatory No. 13. The Court will therefore award HomeRun its reasonable expenses, including attorney's fees, incurred pursuing its motion to compel answers to Interrogatory Nos. 1, 4, 6, 7, 10, 11 and 12. Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion to Compel Discovery (ECF No. 72) is **granted** with respect to its motion to compel Defendant to answers to Interrogatory Nos. 1, 4, 6, 7, 10, 11 and 12. Defendant shall serve answers to these interrogatories within fourteen (14) days of this Order, unless it files an objection. Plaintiff's motion is **denied**, without prejudice, as to Interrogatory No. 13, and in regard to the requests for production of documents not specifically identified in the motion to compel.

**IT IS FURTHER ORDERED** that Plaintiff is awarded its reasonable expenses, including attorney's fees, incurred in pursuing its motion to compel answers to Interrogatory Nos. 1, 4, 6, 7, 10, 11 and 12.

**IT FURTHER ORDERED** as follows:

1. Plaintiff's counsel shall, no later than fourteen (14) days from the entry of this order, up to and including **March 27, 2019**, serve and file a memorandum, supported by affidavit of counsel, establishing the amount of attorney's fees and costs incurred. The memorandum shall provide a reasonable itemization and description of work performed, identify the attorney(s) or staff member(s) performing the work, the customary fee of the attorney(s) or staff member(s) for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

2. Defendant Twin Towers Trading shall have fourteen (14) days from service of the memorandum of costs and attorney's fees, up to and including **April 10, 2019**, in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

. . .

. . .

13

3. Plaintiff shall have seven (7) days from service of the responsive memorandum, up to and including **April 17, 2019**, in which to file a reply.

DATED this 13th day of March, 2019.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**

14